THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, PLAINTIFF IN ERROR, v. WALTER B. HARDY, DEFENDANT IN ERROR.

On error to the Supreme Court. For opinion of the Supreme Court, see *ante, p.* 35.

For the plaintiff in error, *Flavel McGee.*

For the defendant in error, *Thomas N. McCarter, Jr.*

PER CURIAM.

The judgment below is affirmed, for the reasons given by the Supreme Court.

GUMMERE, J. (dissenting). The question to be determined in this case is the right of Hardy, the defendant in error, to recover from the Delaware, Lackawanna and Western Railroad Company damages for injuries received by him while assisting in the work of rebuilding one of the company's bridges near its station at Newark, and upon which its main-line tracks were laid. This work was being done under a contract between the railroad company and the Passaic Rolling Mill Company, by the terms of which the latter corporation was to furnish the materials required for rebuilding the bridge, and also skilled labor to do the work. The work was to be done under the supervision of the railroad company's engineer, but the workmen were paid by the rolling mill company. The amount of wages paid, however, was repaid to it by the railroad company, with a certain percentage added. The plaintiff, who was an employe of the rolling mill company, was one of the workmen furnished by it under the contract to do the work of rebuilding the bridge.

The injuries for which Hardy sues were received in this way : A train of empty cars was run out upon the bridge by the railroad company's employes and left standing there, the engine having been detached and taken away. Hardy at that time was engaged in wedging up some false work, and, in order to do so, he was compelled to stand alongside of and below the train, grasping one of the rails of the track with his left hand while he used his mallet with his right. While he was so at work another engine was coupled to the train, at the end opposite to that from which the original one had been cut loose, and drew the train back in the direction from which it had come. The wheels of one of the cars, near to which Hardy's hand was resting, ran over it, crushing it badly.

The trial at the Circuit resulted in a verdict and judgment

for the plaintiff, and the Supreme Court, on review, affirmed the judgment. It was urged before that court, and again before us, that on the facts above stated a recovery should not have been permitted, for the reason that the plaintiff and the employes of the defendant company who were operating the train were engaged, at the time of the accident, in a common employment; that they were fellow-servants, and that, conse-quently, the railroad company was not liable even if the plaintiff's injuries resulted from the careless handling of the train.

I concur entirely in what was said by Mr. Justice Magie, on this branch of the case, in delivering the opinion of the Supreme Court, and am satisfied that there was no error in refusing to set aside the judgment of the Circuit Court on this ground.

Another ground upon which the Supreme Court was asked to reverse the judgment of the trial court, and which was also assigned for error here, was that there was no evidence in the case which would justify a finding that the plaintiff's injuries resulted from the negligent conduct of the defendant company or of its employes, and I am unable to agree with the con-clusion reached by the Supreme Court that there is no sub-stance in this contention. That court disposes of this point as follows (I quote from the opinion): "This contention cannot prevail. The railroad company had arranged to rebuild its bridges while using them for the passage of its trains, and, in this case, for drilling a train. This use rendered the situa-tion of all workmen employed on the bridge exceedingly perilous. That there was cast upon the company a duty to take such reasonable care for the safety of those workmen as the extraordinary circumstances made requisite, and that for the want of such care by its servants it would be liable, are propositions not open to discussion. There was evidence from which may be inferred the want of reasonable notice to work-men, who might be imperilled thereby, of the movement of this train."

It cannot, of course, be questioned that, under the circumstances existing, a duty rested upon the defendant company to exercise a care for the safety of the men who were at work rebuilding the bridge, commensurate with the danger to which they were exposed. I am, however, unable to find anything in the evidence to justify the conclusion that the injuries which were inflicted upon the plaintiff resulted from the failure of the railroad company to fully and completely discharge that duty. The situation, as disclosed by the evidence, was this: The plaintiff and the other employes of the rolling mill company who were engaged in the work of rebuilding the bridge, were accustomed to begin their work at seven o'clock each morning. As they were quitting work, however, on the day before the accident happened, the foreman of the rolling mill company, under whose direction they were working, directed them to return to work the next morning at four o'clock, and they did so. No notice was given to the railroad company nor to its employes (so far as the evidence shows) of the change in the hour for beginning work, nor does it appear that any of the crew which was in charge of the train which ran over the plaintiff's hand knew of his presence on the bridge at the time of the accident, which occurred about six o'clock in the morning.

The duty resting upon the railroad company to look out for the safety of the men who were doing the work of rebuilding the bridge was not a continuous one. It only existed during the hours when they were at work. It ceased when the men stopped work at night, and did not begin again until they resumed work the next morning. During this period, which ordinarily was from six o'clock in the evening until seven o'clock the following morning, the company was under no obligation whatever to take them into consideration in the operation of its road at this point. This, it seems to me, cannot be controverted. But, in my opinion, not only was there no duty resting upon the company to provide for the safety of these men during the time when they were not

engaged at work upon the bridge, but it was justified in assuming that there would be no change in their hours of work unless it received notice thereof, and it had a right to operate its road on that assumption. If this be so, then the duty which the company owed to the plaintiff, of affording him protection while at his work, was fully discharged by providing for his safety each day from seven o'clock in the morning until six in the evening. And this the company did. The additional duty of providing for his safety at any time after six in the evening and before seven in the morning could only be imposed upon it by notifying it that such protection would be needed.

As I have already stated, no notice was given to the company that the plaintiff would need such protection on the morning of the accident. There is nothing in the case to suggest the idea that it either knew or ought to have known that he was to commence work on that day at an earlier hour than seven o'clock, nor is there any evidence which will warrant the conclusion that a single member of the crew which was operating the train at the time of the accident, was aware of his presence on the bridge.

It seems to me that this judgment can only be sustained upon the theory that a railroad company, in a case like the present, is liable for a failure to protect not only against those dangers the existence of which it knows or ought to know, but also against dangers the existence of which it neither knows nor could reasonably have anticipated. That such a liability exists I cannot believe. I am therefore constrained to vote to reverse this judgment.

*For affirmance*—DEPUE, LIPPINCOTT, LUDLOW, VAN SYCKEL, BOGERT, DAYTON, KRUEGER, NIXON. 8.

*For reversal*—THE CHANCELLOR, GUMMERE, BARKALOW, HENDRICKSON. 4.